Siggins, J., Concurring
I join fully in the majority opinion authored by Justice Jenkins. I am writing separately to address my particular impressions and observations of the nature of the plaintiffs' claim.
There is no question that this case is largely about the adequacy of state financial support for California public schools. The defendants are the State of California, *904 the Governor, State Controller and the Director of the State Department of Finance. The Superintendent of Public Instruction and the State Board of Education are not parties. The complaints seek declaratory and injunctive relief to require the state to "set apart the revenues" to "provide and support an education finance system" that will provide students "the opportunity to obtain a meaningful education and to learn the academic content standards."
The plaintiffs allege that our state's constitutionally recognized right to education brings with it an obligation of the state to fund education at a qualitative level-an obligation that arises organically and by implication from a reading of article IX sections 1 and 5 of our state constitution together. They say, "Taken as a whole, the language and history of article IX make clear that the fundamental right to an education must have some qualitative meaning, and it is the duty of the State to keep up and support an educational system that provides all California school children that fundamental right." This implicit constitutional obligation is yet inchoate and undefined, and no court of our state has yet recognized it.
As much as I can appreciate the plaintiffs' frustration and dissatisfaction with the overall adequacy of California's public schools, and recognize our Legislature's challenges in adequately funding schools to meet the standards it sets, I cannot agree that article IX provides a right to command the state to fund schools at some qualitative level. I so conclude for three principal reasons.
Our state constitution contains provisions that, the plaintiffs acknowledge, explicitly set a minimum level of funding to public schools. But it also contains provisions that set a maximum. Proposition 98 passed by the voters in 1988 and Proposition 111 passed in 1990 established a minimum level of funding commonly known as the minimum funding guarantee, but also established a limit of excess revenues that can go to the schools. (Cal. Const., art. XVI, §§ 8, 8.5.) Moreover, as recently as 2014, voters approved a measure placed on the ballot by the Legislature to add section 21 to article XVI of the state constitution to create a state reserve for schools and community colleges and thereby lessen the impact of any economic downturn on the amount of money available to the schools under constitutional formulas. For me, these express provisions conflict with the plaintiffs' argument that an implicit constitutional right to educational adequacy mandates some other minimum specific level of state support to the schools.
Second, I have no quibble with the plaintiffs' position that the state must afford students the "opportunity to obtain a meaningful education and to learn the academic content standards." For me, assessing whether that obligation has been fulfilled begins and ends with whether our educational system enables sufficient numbers of students to meet the standards articulated in state statutes. The Superintendent of Public Instruction is required by law to develop an Academic Performance Index that measures the performance of school districts, schools and pupils. This index is required to take into account results of statewide achievement tests administered to students in grades 2 through 11. (Ed. Code, § 52052, subd. (a)(1) & (a)(4)(A).) In 2013, this system of assessment was modified to utilize a new testing method. (Ed. Code, § 52052 as amended by Stats. 2013, ch. 489 (A.B. 484).) The new testing and assessment scheme reflects the "intent of the Legislature that the state's system of public school accountability be more closely aligned with both the public's expectations for public education *905 and the workforce needs of the state's economy. It is therefore necessary that the accountability system evolve beyond its narrow focus on pupil test scores to encompass other valuable information about school performance, including, but not limited to, pupil preparedness for college and career, as well as the high school graduation rates already required by law." (Ed. Code, § 52052, subd. (a)(4)(H).)[1]
The plaintiffs say the academic standards articulated in our Education Code inform the constitutional right to a quality education but do not prescribe it. I disagree. It seems to me that our state's obligation to ensure that most students perform at adequate levels is prescribed in the statutory academic standards. In the event that large numbers of students cannot meet expected levels of achievement, an action should arise under the statutes to improve the performance of our public schools without resort to the general language of article IX as authority. Such a statutory basis for an action would also be in accord with the general principle of judicial restraint that courts should not decide constitutional questions where other grounds are available and dispositive of the issues. (Santa Clara County Local Transportation Authority v. Guardino (1995) 11 Cal.4th 220, 230, 45 Cal.Rptr.2d 207, 902 P.2d 225.) The plaintiffs did not allege any statutory theory for a cause of action in this case, so the parameters of such a claim must await another day.
Finally, also in 2013, our Legislature modified our school funding formula to better address needs based upon differences between school district populations and appropriated an additional $2 billion to the public schools. (Stats. 2013, ch. 47.) Whatever this may mean for the future, one thing seems clear to me. State policymakers are working on the problem, and an action that primarily seeks to increase the amount of state funds provided to the schools may not be the prescription for success. Rather, the balance between more resources and operational and organizational change in the schools may need to be differently struck. Recognition of some duty to support and fund the schools at some particular level may, in the end, do little to advance the cause of educational adequacy.

Section 1 of article IX of the California Constitution states: "A general diffusion of knowledge and intelligence being essential to the preservation of the rights and liberties of the people, the Legislature shall encourage by all suitable means the promotion of intellectual, scientific, moral, and agricultural improvement."
Section 5 of article IX of the California Constitution states: "The Legislature shall provide for a system of common schools by which a free school shall be kept up and supported in each district at least six months in every year, after the first year in which a school has been established."